# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TARA M. KULWICKI, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COBB HOSPITAL, INC., a/k/a WELLSTAR COBB HOSPITAL, INC., and WELLSTAR HEALTH SYSTEM, INC.,<br><br>Defendants. | Civil Action No. _____<br><br><br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

## CLASS ACTION COMPLAINT

Plaintiff, Tara M. Kulwicki, by undersigned counsel files this Civil Complaint and in support alleges the following.

### I.  Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3), as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1331.

### II.  Venue

2. Venue is proper in the Northern District of Georgia, in that this action arises out of events that occurred in Cobb County. Defendants are subject to personal

1

jurisdiction in Georgia because both are citizens of Georgia and have their principal places of businesses here.

### III. Administrative Exhaustion

3. Plaintiff has satisfied all the procedural and administrative requirements set forth in Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, as amended, and in particular:

    a. Plaintiff, individually and on behalf of those similarly situated, filed a timely Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission (EEOC) on September 16, 2021.

    b. Plaintiff received a Notice of Right to Sue from the EEOC dated July 17, 2024 and this action was filed with this Court within 90 days of receipt of that Notice.

4. The EEOC investigated Plaintiff's allegations and concluded that Defendants' actions were discriminatory on the basis of Plaintiffs' sex. The EEOC's Determination is attached as Exhibit A.

### IV. Parties

5. Plaintiff, Tara M. Kulwicki, is an individual who resides at 2507 Knowlin Circle, Acworth, GA 30102.

6. Defendant, Cobb Hospital, Inc., a/k/a Wellstar Cobb Hospital, Inc., ("Defendant Cobb") is a medical hospital that is part of Defendant, Wellstar Health System, Inc., with a principal place of business located at 3950 Austell Road,

Austell, GA, 30106-1174. At all times relevant hereto, Defendant Cobb was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

7. Defendant, Wellstar Health System, Inc. ("Defendant Wellstar") is a health system, with a principal place of business located at 793 Sawyer Road, Marietta, GA 30062. At all times relevant hereto, Defendant Wellstar was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

8. Defendant Cobb and Defendant Wellstar were joint employers.

### V. Factual Background

9. Kulwicki is a lesbian.

10. Defendants COBB and WELLSTAR are joint employers as they exerted significant control over Plaintiff and Class members; shared the authority to hire and fire employees; shared the authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; shared day-to-day supervision, including employee discipline; and shared control of employee records.

11. On February 19, 2019, Kulwicki started working for Defendants as a Registered Nurse and enrolled in their Medical Plan.

12. Kulwicki wanted to have a child. As a homosexual woman, she cannot engage in coitus, but can become pregnant with alternative infertility treatments such

3

as intrauterine insemination ("IUI"), in vitro fertilization ("IVF") or other Advanced Reproduction Technology ("ART").

13. Those enrolled in the Medical Plan who qualify for infertility treatment benefits may have the costs of Comprehensive Infertility Services ("CIS") covered under the Medical Plan. CIS includes "ovulation induction with menotropins," and IUI.

14. Under the Medical Plan, if CIS treatments do not result in pregnancy, Plan Holders may receive authorization for Advanced Reproductive Technology ("ART") such as IVF.

15. For the costs of CIS, and thus ART, to be covered under the Medical Plan, a Plan Holder would need to show that they meet the Defendant's definition of "infertile."

16. On July 27, 2021, after Kulwicki sought precertification for CIS benefits, Defendants' health plan notified Kulwicki that she was denied reproductive healthcare assistance because she did not meet the criteria under the plan's definition of infertility.

17. Under Defendants' health plan, infertility is defined as being a woman who is under 35 years of age; one year or more of timed, unprotected coitus or 12 cycles of artificial insemination; or for a woman who is 35 years of age or older, six months or more of timed, unprotected coitus, or six cycles of artificial insemination.

4

18. Based on the above criteria, Kulwicki does not and cannot meet the criteria of six months or more of timed, unprotected coitus without paying for a series of Intrauterine Insemination treatments.

19. Women in heterosexual relationships can meet the policy's criterion for infertility without incurring out-of-pocket expenses for artificial insemination.

20. Women who do not conform to traditional stereotypes associated with reproduction, including, for example, lesbians, cannot, and must pay for what is made available to other women for free.

21. Defendants' health care policy discriminates against non-heterosexual female employees on the basis of sex (female-sexual orientation and sex-stereotyping).

22. Defendants' actions engaged in sex discrimination against a class of lesbian employees—and other women failing to conform to traditional stereotypes associated with female reproduction in violation of Title VII, as amended.

23. **Class Definition:** Plaintiff brings this action as a class action under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, seeking declaratory relief and damages on behalf of the following class of individuals:

> All non-heterosexual female individuals who were employed by Defendants and covered by their Medical Plan, submitted a claim or precertification request for infertility treatment benefits and were denied for failing to satisfy the "medical definition" of infertility under the Plan; or paid out-of-pocket for infertility treatment knowing they would be denied benefits for the same reason; or will submit and be

denied benefits, or pay out-of-pocket, for infertility treatment.

24. The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) persons who properly execute and file a timely request for exclusion from the Class; (3) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (4) Plaintiff's counsel and Defendant's counsel; and (5) the legal representatives, successors, and assigns of any such excluded persons.

25. **Numerosity:** The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have tens of thousands of employees. Upon information and belief, because of Defendants' discriminatory Medical Plan, a sufficient number of these individuals will be within the class definition to meet the numerosity requirement. The alleged Class is therefore sufficiently numerous.

26. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether the Medical Plan discriminates on the basis of sex, which includes sexual orientation.

b. Whether Plaintiff and putative Class members were excluded from participation in, denied the benefits of, or subjected to discrimination under Defendants' Medical Plans while seeking infertility treatment benefits.

c. Whether the Defendants' policies and practices regarding disbursement of infertility treatment benefits under its Medical Plans constitute disparate treatment of Plaintiff and the putative Class.

d. Whether Defendants' policies and practices regarding disbursement of infertility treatment benefits under its Medical Plan has resulted in, or will result in, a disparate impact on Plaintiff and the putative Class.

e. Whether, as a result of Defendants' policies and practices regarding disbursement of infertility treatment benefits under its Medical Plan, Plaintiff and the putative Class are entitled to equitable, injunctive, and/or declaratory relief, and if so, the nature of such.

f. Whether Plaintiff and members of the putative Class are entitled to receive monetary damages as relief for their financial and emotional harm.

27. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those

of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

28. **Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this dispute and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaints. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

29. **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Defendants have acted and/or refused to act on grounds generally applicable to the Class, making final declaratory relief appropriate.

## Count I
## Title VII – Sex Discrimination

30. Plaintiff incorporates by reference the allegations in Paragraphs 1 to 29, as if fully restated herein.

31. Defendants denied Plaintiff and Class members a term or condition of their employment because of their sex, female, in violation of Title VII of the Civil Rights Act of 1944, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991.

32. Defendants' actions were taken with malice or reckless indifference to Plaintiff's and Class members' federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991 as follows:

a. That the Court enter a judgment declaring Defendants' actions to be unlawful and in violation of the Title VII of the Civil Rights Act of 1964, as amended;

b. That Defendants be required to compensate Plaintiff and Class members for the full value of benefits they would have received had it not been for Defendants' discrimination;

c. That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

d. That Plaintiff be awarded punitive damages in an amount to be determined at trial;

e. That Defendants be enjoined from discriminating or retaliating against Plaintiff and Class members in any manner prohibited by Title VII;

f. That Plaintiff be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorney's fee; and

g. That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

Plaintiff demands trial by jury.

Respectfully submitted:

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
**GIBSON CONSUMER LAW GROUP, LLC**
4279 Roswell Road, Suite 208-108
Atlanta, GA 30342

Tel.: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

Gary F. Lynch (*pro hac vice* forthcoming)
Kelly Iverson (*pro hac vice* forthcoming)
Jamisen Etzel ((*pro hac vice* forthcoming)
**LYNCH CARPENTER, LLP**
1133 Penn Ave.
Pittsburgh, PA 15232
Tel.: (412) 322-9243
Fax: (412) 231-0246
gary@lcllp.com
kelly@lcllp.com
jamisen@lcllp.com

Colleen E. Ramage (*pro hac vice* forthcoming)
**RAMAGE LYKOS, LLC**
525 William Penn Place, 28th Floor
Pittsburgh, PA 15232
Tel.: (412) 325-7700
Fax: (412) 325-7755
cramage@ramagelykos.law

*Attorneys for Plaintiff*

11